(C. D. 327)

Olavarria & Co., Inc. *v.* United States

United States Customs Court, Third Division

(Decided May 6, 1940)

*William Whynman* (*Philip J. Benanti* of counsel) for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General (*Charles J. Miville,* special attorney), for the defendant.

Before Cline, Evans, and Keefe, Judges, Cline, J., not participating.

Evans, Judge: This is an action against the United States in which the plaintiff seeks to recover money claimed to have been assessed as customs duties in excess of the amount due upon an importation of what is described on the invoice as blackstrap molasses. It was assessed by the collector of customs as molasses, a product of Cuba, at $.03174625 per gallon under paragraph 502 of the Tariff Act of 1930, with an allowance of 20 per centum ad valorem under the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba of December 11, 1902, and the act of December 17, 1903. Plaintiff claims that the molasses in question was exported and therefore the duty paid should be refunded, and in an amendment to his pleadings he claims that duty should have been assessed at three one-hundredths of 1 cent per pound of total sugars under paragraph 502, *supra,* as molasses not imported to be commercially used for the extraction of sugar or for home consumption, and further, that "the regulation made by the Secretary of the Treasury or his duly authorized agents defining blackstrap molasses and limiting the total sugar content, is *ultra vires,* illegal, void, legislative in character, and not authorized by law."

At the hearing counsel for the Government moved to dismiss the protest insofar as it undertook to apply to entry 804780 on the ground that it was untimely. Counsel for the importer admitted that the

motion was well taken, whereupon the protest was dismissed as to that entry.

With reference to the remaining entry, 808675, the record shows that it was liquidated on May 6, 1937. The protest was filed June 18, 1937, and is therefore timely as to that entry.

At the hearing the importer gave his definition of blackstrap molasses and stated that the merchandise in question is blackstrap not intended for human consumption. He failed to prove the filing of an affidavit to that effect on entry.

Under article 677 of the Customs Regulations of 1931, as amended by T. D. 45925, approved October 17, 1932, the importer was required to file on entry an affidavit stating that the molasses is not to be used commercially, for the extraction of sugar or for human consumption.

On the question of classification it is observed that the tariff act in paragraph 502 does not use the term "blackstrap." The merchandise was entered under the provision for molasses not imported to be commercially used for the extraction of sugar or for human consumption. It was invoiced as blackstrap.

The importer assumes, and the assumption is borne out by the rate applied, that the molasses in question was classified pursuant to the instructions contained in article 677 of the Customs Regulations of 1931, as amended by T. D. 48127, approved January 23, 1936, wherein there appears a definition of blackstrap molasses. He objects to this definition and assigns claims of illegality thereto on the ground that the attempted definition and the limitation of the sugar content is *ultra vires*, illegal, void, legislative in character, and not authorized by law.

As we view the situation it is unnecessary for the disposition of this case to pass on the question. If we assume that the amendment promulgated as T. D. 48127 was illegal, either because of its retroactive aspect or for the reasons stated, and should set it aside, the importer would be confronted with the provisions of the amendment set out in T. D. 45925, a previous amendment to article 677, approved October 17, 1932. Paragraph (g) of said regulation as amended reads as follows:

(g) Upon satisfactory proof of use of the molasses for purposes other than for the extraction of sugar or for human consumption or of the exportation or destruction thereof the entry may be liquidated at the rate of three one-hundredths of 1 cent per pound of total sugars. When such proof of use or other disposition of the molasses is not made within three years from the date of the entry, or the use shown does not warrant the classification claimed, the entry shall be liquidated at the higher rate applicable under the first clause of paragraph 502.

It may be that the collector acted under the last-quoted provision for all that appears in the record. However, since these regulations are not mandatory, not being provided for in the paragraph involved,

but were made under the general authority of the Secretary to make regulations under the principle decided in many cases in this court, proof may be offered at the hearing of any fact necessary to be proven in order to meet the requirements of the statute.

Paragraph (f) of said regulation provides, among other things, as follows:

If it [the molasses] has not been used in the United States, evidence of exportation or destruction satisfactory to the collector should be required.

This same provision is also found in the later amendment, T. D. 48127. It therefore appears that no matter under which of these regulations the collector may have acted, either one of them would support the plaintiff's claim for a refund of the duties paid, since satisfactory proof has been produced to the court showing that the molasses in question had been exported and therefore it had not been used in the United States.

The claim of the plaintiff that duty should be refunded is sustained as to entry 808675. In all other respects it is overruled.

Judgment will be rendered accordingly. It is so ordered.